# IN THE UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF MISSOURI
# WESTERN DIVISION

| | |
|---|---|
| PAMELA S. PORTER, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 4:14-CV-00813-NKL |
| ) | |
| CAROLYN W. COLVIN, ) | |
| Acting Commissioner ) | |
| of Social Security, ) | |
| ) | |
| Defendant. ) | |

**ORDER**

Plaintiff Pamela Porter seeks review of the Administrative Law Judge's decision denying her application for Social Security benefits. For the following reasons, the decision of the Administrative Law Judge ("ALJ") is reversed and the case is remanded for reconsideration.

**I.   Background**

**A.  Medical History**

Porter claims disability based primarily on anxiety, depression, sleep apnea, knee problems, and breathing problems. Her alleged onset date is February 3, 2012.

In August 2009, Porter was diagnosed with bronchitis with wheezing. She was eventually admitted to the hospital where she was treated with Cymbalta and a CPAP machine. After three days in the hospital, she was discharged with directions to remain on oxygen, Xanax, Cymbalta, Lisinopril/HCTZ, Prednisone taper, Advair, and Singulair.

1

She was diagnosed with asthma exacerbation, tobacco abuse, obesity, hypertension, and depression.

In June 2010, Porter met with Dr. Navato, her treating psychiatrist. She stated that she was only sleeping about three hours per night and had experienced a series of stressors. She expressed feelings of not wanting to live and her doctor noted that she was more anxious and upset. Her Cymbalta was increased and Lyrica, Lunesta, and Restoril were prescribed. By January 2011, Porter reported feeling hopeful and having a stable mood. In May 2011, Porter reported that she was not sleeping well and felt that her medications were not working as well. She stated that she was in pain all the time.

In October 2011, Porter was evaluated in the emergency department. She stated that she had suffered from back and leg pain for the last five days and fell out of bed the previous night. She was diagnosed with sciatica. She returned to the emergency department in December with vomiting and diarrhea.

In January 2012 Porter again met with Dr. Navato. She stated that she was still battling depression and reported sleep disturbance, low motivation, and low mood. She was diagnosed with major depressive disorder and anxiety disorder.

Porter returned to the emergency department in February 2012 because she had injured her right shoulder at work trying to lift fifty pound bags of cat litter. She was diagnosed with right shoulder strain and was prescribed Zanaflex and Vicodin.

Throughout March 2012 Porter saw various physicians complaining of shortness of breath, intermittent fever, and chills. She refused BiPAP and intermittently took off her oxygen. During one hospital visit she was found to have pneumonia. After her

diagnosis, one of Porter's doctors learned that she may not have been getting the amount of oxygen she needed. The doctor diagnosed exacerbation of COPD, pulmonary infiltrates, hilar and mediastinal adenopathy, oropharyngeal thrush, obesity, and obstructive sleep apnea. The steroids prescribed Porter for the pneumonia resulted in hyperglycemia.

Porter's mental state was unchanged through August 2012. She also reported sharp lumbar pain that was gradually getting worse. She was diagnosed with tobacco use disorder, hypertension, lumbago, chronic airway obstruction, obesity, and esophageal reflux. Her cholesterol was very elevated. She continued to experience shoulder pain from her injury.

In September 2012, Porter reported to Dr. Navato that she enjoyed her summer and spent time reading. However, by October she reported that she was not journaling because she was afraid someone would find the journal and use the information against her. That same month she had a negative chest x-ray.

In January 2013, Dr. Navato examined Porter, which revealed a smoker's cough, normal gait, mildly depressed mood, good attention and concentration, normal memory, and good judgment. In February she was diagnosed with COPD exacerbation, morbid obesity, and sleep apnea. She was prescribed Cipro and Prednisone. In March she was examined by Dr. Bhat in the Sleep Clinic and had her "very severe obstructive sleep apnea" corrected. The day following the examination she reported "the best sleep quality" and extra energy the next day.

3

In April 2013, Porter presented to the emergency department with bilateral foot pain and swelling. An EKG showed sinus tachycardia. A chest x-ray showed mild multilevel degenerative disc disease within the spine and mild cardiomegaly. An echocardiogram later that month revealed normal left ventricular ejection fraction, tachycardia, and trace mitral regurgitation. She was admitted to the hospital a week later for pitting edema in both legs, fatty infiltrate of the liver, and acute exacerbation of COPD and dyspnea.

In May 2013, Porter saw Dr. Bhat and reported 62% compliance with her CPAP. She was encouraged to increase her compliance, lose weight, and stop smoking. A nurse practitioner examined her and Porter reported experiencing right knee pain, which intensified with bending and weight bearing. She rated her pain at 8 out of 10. She was diagnosed with osteoarthritis, allergic rhinitis, hypercholesterolemia, tobacco use disorder, chronic airway obstruction, and esophageal reflux.

In June, Porter presented to the emergency department and a chest x-ray revealed chronic interstitial changes and peribronchial cuffing consistent with chronic bronchitis. She was administered breathing treatments and Prednisone. She continued to visit the emergency department and her doctors throughout July and August complaining of similar symptoms and receiving similar diagnoses.

In August 2013, Porter was examined by Dr. Conaway, a cardiologist, for pre-op clearance prior to possible lap band surgery. Dr. Conaway decided to re-evaluate Porter again in three months.

In October, Porter was examined due to a bad cold with productive cough. She was running low on breathing treatment medication and had no energy. She stated that she was using her CPAP faithfully. Her breath sounds were diminished and coarse. She was diagnosed with allergic rhinitis, obstructive sleep apnea, morbid obesity, COPD, and acute bronchitis. She was prescribed a variety of medications to help mitigate her symptoms.

### B. Medical Opinion Evidence and ALJ Decision

The record contains medical opinions from three doctors: Dr. Michael Navato, Porter's treating psychiatrist, and Dr. Charles W. Watson and Dr. Mel Moore, non-examining physicians.

Dr. Navato completed two reports regarding Porter's functional capacity, one in June 2012 and one in August 2013. The 2013 report revealed greater restrictions than the 2012 report. In 2013, Dr. Navato opined that Porter suffered from mild limitations in her ability to remember locations and work procedures; understand, remember, and carry out very short and simple instructions; sustain an ordinary routine without special supervision; interact appropriately with the general public; ask simple questions or request assistance; maintain socially appropriate behavior; adhere to basic standards of neatness and cleanliness; and be aware of normal hazards and take appropriate precautions. He opined that Porter was moderately limited in her ability to travel in unfamiliar places or use public transportation. Dr. Navato stated that Porter had marked limitation in her ability to maintain attention and concentration for extended periods; work in coordination with or proximity to others without being distracted by them; make

5

simple work-like decisions; get along with co-workers and peers without distracting them or exhibiting behavioral extremes; respond appropriately to changes in the work setting; and set realistic goals or make plans independently of others. The doctor stated that she was extremely limited in her ability to complete a normal workday or work week without interruptions from psychologically based symptoms; perform at a consistent pace without an unreasonable number or length of rest periods; and get along with coworkers and peers without distracting them or exhibiting behavioral extremes. Along with the report, Dr. Navato provided a letter stating that he had been treating Porter for anxiety disorder and severe MDD since April 2003. He stated that she had received treatment including individual outpatient psychotherapy, outpatient group therapy, and medication. He stated in his letter that "Behaviors have persisted, and it is doubtful if [Porter] can return to competitive employment within the next 1 year."

The record also includes a document prepared by a single decision maker which contains the evaluations of Dr. Watson and Dr. Moore. Dr. Watson offered an opinion in September 2012, stating that Porter had mild restrictions of activities of daily living, mild difficulties maintaining social functioning, and moderate difficulties maintaining concentration, persistence, or pace due to affective and anxiety disorders. He stated that Porter had the ability to acquire and retain at least simple instructions and to sustain concentration and persistence with simple repetitive tasks and had no significant impairment in social interaction. Dr. Watson opined that Porter was moderately limited in her ability to understand, remember, and carry out detailed instructions; maintain attention and concentration for extended periods; work in coordination with or proximity

6

to others without being distracted by them; and interact appropriately with the general public.

Dr. Moore opined in October 2012 that Porter could lift and/or carry 20 pounds occasionally, 10 pounds frequently, stand or walk for six hours per day, and sit for six hours per day. He opined that she was able to climb ramps and stairs frequently; climb ladders, ropes, and scaffolds occasionally; and frequently balance, stoop, kneel, crouch, and crawl. He opined that she should avoid even moderate exposure to fumes, odors, dusts, gases, poor ventilation, and hazards.

Upon consideration of the record, the ALJ concluded that Porter had severe impairments including obesity, chronic obstructive pulmonary disease ("COPD"), mild bilateral knee degenerative arthritis, sleep apnea, depression and anxiety disorders. In light of these severe impairments and Porter's non-severe afflictions, the ALJ concluded that Porter had the following residual functional capacity ("RFC"):

> [T]o perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) requiring no climbing of ladders, ropes or scaffolds, no crawling; occasional climbing of ramps and stairs; occasional balancing, stooping, kneeling and crouching; no overhead work; avoiding all exposure to pulmonary irritants such as fumes, odors, dust, gases and poorly ventilated areas; avoiding unprotected heights and hazardous machinery; simple, repetitive and routine tasks requiring only occasional interactions with the co-workers and the public. Additionally, the claimant is to be allowed to use oxygen while seated at her workstation.

In reaching this conclusion, the ALJ gave Dr. Navato's opinion little weight "because he has provided minimal treatment and his opinion is inconsistent with the treatment he has provided." The ALJ stated that Dr. Navato's opinion that Porter had experienced

7

repeated episodes of decompensation each of extreme duration was not supported by the record.  The record also did not reveal individual psychotherapy visits or that Porter was hospitalized or had hospitalization recommended for her mental disorders.  The ALJ gave Dr. Moore's opinion some weight due to his familiarity with the definitions and evidentiary standards used by the Agency, but concluded that Porter was more limited that opined by Dr. Moore.  Dr. Watson's opinion was given great weight because his opinion was consistent with the evidence of the record and Dr. Watson was also familiar with the Agency standards.

The ALJ relied on the opinion of a vocational expert to conclude that Porter was capable of maintaining substantial gainful employment with her assessed RFC.  The vocational expert testified that based on the Dictionary of Occupational Titles and her own work experience, Porter could work as a lens inserter or document preparer.

**II.      Standard**

"[R]eview of the Secretary's decision [is limited] to a determination whether the decision is supported by substantial evidence on the record as a whole.  Substantial evidence is evidence which reasonable minds would accept as adequate to support the Secretary's conclusion.  [The Court] will not reverse a decision 'simply because some evidence may support the opposite conclusion.'"  *Mitchell v. Shalala*, 25 F.3d 712, 714 (8th Cir. 1994) (citations omitted).  Substantial evidence is "more than a mere scintilla" of evidence; rather, it is relevant evidence that a reasonable mind might accept as adequate to support a conclusion.  *Gragg v. Astrue*, 615 F.3d 932, 938 (8th Cir. 2010).

## III. Discussion

Porter contends that the ALJ's decision is insufficient for two reasons: (1) the RFC is unsupported by substantial evidence of the record and (2) the ALJ failed to identify substantial gainful employment Porter could perform with her RFC. The Court concludes that the record contains insufficient evidence to support the RFC determination.

As discussed above, the record contains three medical opinions regarding Porter's functional capacity. The only opinion in the record regarding Porter's physical limitations comes from Dr. Moore, a non-examining and non-treating physician. Dr. Navato, the only treating physician opinion in the record, discussed Porter's mental impairments. Dr. Watson, a non-examining physician, also discussed Porter's mental functional capacity.

Dr. Moore's opinion does not constitute substantial evidence to support the ALJ's RFC determination regarding Porter's physical limitations. First, Dr. Moore's opinions are incorporated into a single decision maker opinion. It is unclear from the opinion exactly which opinions were rendered by Dr. Moore and which were rendered by the single decision maker. Single decision maker opinions are not entitled to significant weight in analyzing the extent of a claimant's disability. *Harrell v. Colvin*, 2013 WL 4505375, at *2 (W.D. Mo. Aug. 12, 2013) ("A single decision-maker is not an acceptable medical source, and therefore, cannot give a medical opinion or establish the existence of a medically determinable impairment."). As it is impossible to say from the record which

9

opinions are Dr. Moore's and which opinions belong to the single decision maker, this opinion alone cannot constitute substantial evidence of Porter's physical RFC.

Second, the record contains no medical opinions or evidence to support Dr. Moore's conclusions regarding the extent of Porter's physical capacity. There is no indication in the record that Porter ever underwent any tests that would support Dr. Moore's conclusion that she is capable of lifting and/or carrying 20 pounds occasionally, 10 pounds frequently, standing or walking for six hours per day, and sitting for six hours per day. The record also contains no support for Dr. Moore's opinions that Porter is capable of climbing ladders, ropes, and scaffolds occasionally and frequently balancing, stooping, kneeling, crouching, and crawling. *See Jenkins v. Apfel*, 196 F.3d 922, 924 (8th Cir. 1999) (concluding that the ALJ's RFC determination was not based on substantial evidence when "[t]he non-treating physician's specific judgments of [the claimant's] capacities were inferences from other physicians' much more general findings.") All of Porter's medical records leading up to Dr. Moore's opinion in October 2012 suggested she suffered from significant breathing and mobility problems that could inhibit such activities. While the ALJ concluded that Porter suffered from more physical limitations than found by Dr. Moore, the record also contains no medical evidence to support the ALJ's conclusions regarding the specific extent of Porter's physical abilities, particularly regarding Porter's ability to occasionally balance, stoop, kneel, and crouch. The record overwhelmingly consists of generic treatment records from when Porter sought emergent medical help and does not contain any medical opinions or evidence regarding Porter's functional capacity on a day to day basis.

10

Substantial evidence is also lacking to support the ALJ's conclusions regarding the extent of Porter's mental limitations. The only limitation in the RFC regarding Porter's mental capacity states that she is restricted to "simple, repetitive and routine tasks requiring only occasional interactions with the co-workers and the public." In evaluating Porter's mental limitations the ALJ gave Dr. Watson's opinion "great weight," despite Dr. Watson never having examined or treated Porter, and gave Dr. Navato's opinion "little weight," despite his long term treatment relationship with Porter.

Ordinarily, treating physician opinions are entitled to significant weight in determining the extent of a claimant's ability. *See* SSR 96-2p West's Soc. Sec. Rulings 111-15 (Supp. 2009) ("In many cases, a treating source's medical opinion will be entitled to the greatest weight and should be adopted, even if it does not meet the test for controlling weight."). Consulting physician opinions are entitled to much less weight. *Kelly v. Callahan*, 133 F.3d 583, 598 (8th Cir. 1998) ("The opinion of a consulting physician who examines a claimant once or not at all does not generally constitute substantial evidence.").

The ALJ concluded that Dr. Navato's opinion was not entitled to substantial weight because it was not supported by Porter's treatment records. While the ALJ's decision not to afford Dr. Navato's opinion controlling weight was reasonable given Dr. Navato's conclusions regarding Porter's experiences with decompensation which are largely unsupported by the record, the ALJ's decision to accord the opinion "little weight" is not supported by substantial evidence. Even if a treating physician opinion contains a statement that is inconsistent with the record, the weight given to the opinion

11

should still accommodate for the length, nature and extent of the treatment relationship, the opinion's consistency with the record as a whole, the degree to which the opinion is supported by the evidence, whether the doctor is a specialist, and "other factors." 20 C.F.R. § 404.1527(d) (2010). The treatment relationship and general consistency of Dr. Navato's opinion with the medical records and evidence suggest that the opinion was due more than "little weight." Dr. Navato treated Porter over the course of eight years and was well acquainted with her and her medical history at the time he rendered his opinion regarding her functional capacity. His opinion was also rendered approximately a year after Dr. Watson and Dr. Moore's opinions. As previously noted, Porter's medical records throughout the end of 2012 and 2013 suggest that her symptoms were worsening. These medical records support Dr. Navato's conclusion that Porter was more limited in 2013 than she had been in 2012.

In addition to focusing on the purported inconsistency between Dr. Navato's opinion and the medical evidence of the record, the ALJ concluded that Dr. Navato's conclusions were not entitled to weight because Porter had not had outpatient therapy or group therapy for her mental impairments. However, Dr. Navato informed the Social Security Administration in June 2012 that Porter had previously undergone individual psychotherapy, outpatient group therapy, and medication treatment trials. The fact that the record does not reveal documentation of these courses of treatment does not mean that they were never pursued. Moreover, this treatment did not affect Dr. Navato's opinion that Porter would not be able to sustain and perform a job in a competitive work

12

environment.[1]  The ALJ also noted that most of the documents reflecting Porter's visits to Dr. Navato simply involved "medication management with minimal time for discussion or 'venting.'"  However, Porter's need for ongoing changes to her prescription regimen suggests that even with treatment, her symptoms were not under control.  Moreover, prescriptions adjustments are central to the role of a psychologist and are not evidence of mere cursory treatment.  The ALJ should have more rigorously analyzed the weight Dr. Navato's opinion was due given his longstanding relationship with Porter and the fact that many of his opinions are consistent with Porter's testimony and medical records.

    Dr. Watson's opinion, afforded great weight by the ALJ, was rendered a year before Dr. Navato's second opinion and was not based on any treatment or personal evaluation of Porter.  Dr. Watson had only Porter's medical records (primarily based on Dr. Navato's treatment of Porter) to evaluate her capabilities.  While Dr. Watson's opinion may reasonably have been accorded some weight in considering the extent of Porter's mental capacity, his opinions – which at points differed significantly from Dr. Navato's – should not have been utilized as the basis of the ALJ's RFC determination

---

[1] Defendant contends that Dr. Navato's statement also took into consideration Porter's physical symptoms which were outside of the doctor's specialty, and therefore the opinion need not have been given weight by the ALJ.  While the ALJ was free to disregard Dr. Navato's commentary regarding Porter's physical symptoms, however, Dr. Navato's decision to opine regarding her larger condition does not provide grounds for the ALJ to disregard the entirety of his opinion which included psychological assessments within his realm of expertise.  Moreover, the ALJ was willing to afford substantially more weight to Dr. Moore's opinion regarding Porter's physical capacity than was afforded to Dr. Navato's opinion regarding her mental capacity, despite the fact that Dr. Moore is an oncologist, which does not relate to Porter's physical symptoms, and Dr. Moore never evaluated Porter.  The inconsistency in the ALJ's reasoning for the weight assessed to the doctors in this case indicates that the record should be reevaluated.

without additional evidence or some personal knowledge of Porter's mental state supporting his conclusions.

The RFC also fails to reflect the ALJ's conclusion that Porter has moderate difficulties maintaining concentration, persistence, or pace. This limitation was also not posed to the vocational expert when the ALJ inquired about Porter's ability to perform substantial gainful activity. This restriction "specifically relates to the failure 'to complete tasks in a timely manner.'" *Chambers v. Barnhart*, 2003 WL 22512073, at *3 (10th Cir. 2003). While the RFC accommodates for Porter's need for "simple, repetitive and routine tasks," it does not say anything about her limited ability to complete tasks in a reasonable timeframe. As the ALJ clearly found this limitation to be significant, it should have been included in the RFC and considered by the vocational expert when assessing Porter's ability to undertake substantial gainful activity. *See Newton v. Chater*, 92 F.3d 688, 695 (8th Cir. 1996) ("Since these deficiencies [regarding concentration, persistence, or pace] were not included in the hypothetical question, the expert did not base his opinion on the full extent of [the claimant's] limitations and his testimony could not have constituted substantial evidence to support the Commissioner's decision.").

Defendant argues that the ALJ properly discredited Porter's subjective complaints regarding her symptoms because she has power of attorney over her grandchildren, helped them with their homework, and did their hair. However, Porter also testified that she provided no care for her grandchildren because she was generally asleep while they were awake. Porter's ability to interact with them on occasion and legal control over them is not evidence that she is capable of maintaining substantial gainful activity. *See*

14

*Kelley v. Callahan*, 133 F.3d 583, 588-89 (8th Cir. 1998) ("a person's ability to engage in personal activities such as cooking, cleaning, and hobbies does not constitute substantial evidence that he or she has the functional capacity to engage in substantial gainful activity"); *see also Draper v. Barnhart*, 425 F.3d 1127, 1130-31 (8th Cir. 2005).

Defendant also argues that Porter's failure to seek consistent treatment for her knee complaints and x rays showing only mild degenerative arthritis in her knees discredit her physical complaints. However, Porter's knee problems are only one aspect of her physical problems and the record does reflect that she received repeated treatment for her knee issues. Defendant further contends that the record shows that Porter's breathing problems were alleviated when Porter complied with her treatment regimen. However, this is contradicted by at least one note in October 2013 stating that though Porter was using her CPAP faithfully, she had no energy and her breath sounds were diminished.

Finally, Defendant's arguments regarding Porter's mental functioning are unpersuasive. Defendant points out that treatment notes from her physicians described her as hopeful, pleasant, friendly, cooperative, and in no distress. However, repeated notes also indicate her being depressed, anxious, paranoid, and needing continual adjustment of her psychological medications. Porter's improved affect on a few occasions does not diminish her complaints regarding ongoing depression and problems with psychological functioning. The ALJ also noted that the impetus for Porter leaving her job as a Wal-Mart cashier was her shoulder injury and not her psychological symptoms. While this timing is certainly relevant to Porter's claim, in light of the

remainder of the record suggesting that Porter was significantly limited by her physical and psychological symptoms, it does not provide substantial evidence for the ALJ's decision to deny Porter benefits.

On remand, the ALJ should afford increased weight to Dr. Navato's opinion based on its degree of consistency with Porter's medical records and Dr. Navato's longstanding treatment relationship with Porter. The ALJ should also seek out additional evaluations from examining or treating physicians who can advise the ALJ about the extent of Porter's physical capabilities based on their interactions with the claimant, rather than solely based on their review of intermittent medical records. Porter's RFC should be reevaluated in light of this evidence and be amended to include the ALJ's conclusion that Porter is limited with regard to concentration, persistence and pace. Finally, the ALJ should consult a vocational expert to evaluate Porter's ability to maintain substantial gainful activity in light of any changes to the RFC. *See Jenkins*, 196 F.3d at 925 ("Since the vocational expert's testimony was based upon [the RFC assessment that was not supported by substantial evidence], we also hold that this testimony was not substantial evidence that [the claimant] could perform other substantial gainful activity.").

### IV.  Conclusion

For the reasons set forth above, the ALJ's decision is reversed, and the case is remanded for reconsideration.

/s/ Nanette K. Laughrey
NANETTE K. LAUGHREY
United States District Judge

16

Case 4:14-cv-00813-NKL   Document 17   Filed 06/22/15   Page 16 of 17

Dated: June 22, 2015
Jefferson City, Missouri